## No. 43,441

DONNA IRENE HOFFMAN, *Appellant,* v. JACKIE E. DAUTEL and DELMAR L. DAUTEL, d/b/a Dautel Brothers, THE HOME INSURANCE COMPANY and THE HOME INDEMNITY COMPANY OF NEW YORK, NEW YORK, Corporations, *Appellees.*

(388 P. 2d 615)

Opinion filed January 25, 1964.

*Sam A. Crow,* of Topeka argued the cause, and *J. A. Dickinson, Ralph E.*

Skoog and *Bill G. Honeyman,* all of Topeka, were with him on the brief for the appellant.

*John A. Bausch,* of Topeka, argued the cause, and *L. M. Ascough* and *J. H. Eschmann,* both of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is a negligence action by the plaintiff against multiple defendants to recover damages arising out of an automobile collision. The plaintiff seeks to recover damages for personal injuries to herself and for the loss of consortium, society and companionship which she alleges were sustained by her because of direct injuries to her husband in the same collision. The plaintiff alleges these injuries were caused by the negligence of the defendants.

The question presented by this appeal is whether a wife can recover damages for loss of consortium resulting from a direct injury to her husband because of the negligent acts of others.

The appeal in this case grows out of the same set of facts reported in *Hoffman v. Dautel,* 190 Kan. 131, 373 P. 2d 191. There the court held an order overruling a motion to strike paragraph XVIII from the petition was not appealable.

Upon remand of the case to the lower court, paragraph XVIII was attacked by a demurrer on the ground it failed to allege facts sufficient to state a cause of action against the defendants for loss of consortium due to the injuries to plaintiff's husband. The demurrer was sustained and the plaintiff has duly perfected an appeal.

The appellant's husband was the driver of the automobile in which she was riding, and she brings this action for her personal injuries as a result of the accident. She joins in her cause of action for personal injuries her right to recover for the negligent impairment of her consortium with her husband. In the same petition she alleges what is denominated a second cause of action pursuant to G. S. 1949, 23-205, not a subject of this appeal. The second cause of action is brought in her name for the benefit of her husband based on the loss or impairment of her ability to perform domestic services.

Three minor children of the appellant were riding in the automobile with them when the collision occurred on June 9, 1958. The children, through their mother and next friend, brought an action to recover damages for the negligent injuries to their father. On

appeal to this court (*Hoffman v. Dautel,* 189 Kan. 165, 368 P. 2d 57) it was held the district court did not err in sustaining the defendants' motion to strike allegations of indirect injury and damage to the children, based upon a direct injury to the father. The court held:

"A minor child has no cause of action for damages arising out of the disability of its father, caused by negligence of the defendant, with attendant loss of acts of parental guidance, love, society, companionship and other incidences of the parent-child relationship." (Syl. ¶ 1.)

Paragraph XVIII, here under attack, in the amended petition of the appellant reads:

"That by reason of the concurrent negligence and concurrent carelessness of the defendants, as set out above, the plaintiff's husband, Everett Eugene Hoffman, who was the driver of the automobile, as hereinbefore alleged, was seriously and permanently injured and that as a result of the injuries to plaintiff's husband, she has been and shall be deprived for the remainder of her life of the services, comfort, society, companionship and consortium of a kind, faithful, and loving husband, damaging plaintiff in the sum of $50,000.00."

G. S. 1949, 23-205 provides:

"That where, through the wrong of another, a married woman shall sustain personal injuries causing the loss or impairment of her ability to perform services, the right of action to recover damages for such loss or impairment shall vest solely in her, and any recovery therefor, so far as it is based upon the loss or impairment of her ability to perform services in the household and in the discharge of her domestic duties, shall be for the benefit of her husband so far as he shall be entitled thereto: *Provided, however,* That nothing herein shall in any way affect the right of the husband to recover damages for the wrongful death of his wife."

The foregoing statute is specifically limited by its provisions. It requires that a wife bring the cause of action in her name for the benefit of her husband based on the loss or impairment of her ability to perform domestic services. In *Clark v. Southwestern Greyhound Lines,* 144 Kan. 344, 58 P. 2d 1128, the husband was denied the right to sue in his own name for the loss of his wife's services and companionship. The court held no distinction can be drawn between "services" and "companionship" because the terms "services" and "domestic duties" include companionship, and the wife is by statute the sole person who may bring such an action for the benefit of her husband.

It has been held proper for a married woman to frame her petition in two causes of action, when she brings an action for damages for her personal injuries caused by the negligence of a third party, and

also to recover damage resulting to her husband from the same negligence, as authorized by 23-205, *supra*. (*White v. Toombs*, 162 Kan. 585, 178 P. 2d 206.)

The appellant argues that if by statute a wife must alone bring such a cause of action, she may certainly bring a cause of action when her husband has been negligently injured, and she alleges damages resulting from injury and loss to her by reason of her husband's injuries and uselessness.

The appellant relies upon the dictum in the *Clark* case, supra, at page 347, to the effect that the husband owes the wife the same duties as does the wife owe the husband.

With the exception of a North Carolina decision (*Hipp v. Dupont* [1921], 182 N. C. 9, 108 S. E. 318, 18 A. L. R. 873), subsequently overruled (*Hinnant v. Power Co.* [1924], 187 N. C. 288, 121 S. E. 307, 37 A. L. R. 889), the right of the wife to recover for loss of consortium caused by negligent injury to her husband was not recognized until 1950, when the case of *Hitaffer v. Argonne Co.* [D. C. Cir. 1950] 183 F. 2d 811, cert. den. 340 U. S. 852, 95 L. Ed. 624, 71 S. Ct. 80, 23 A. L. R. 2d 1366, held she was entitled to relief. (*Hitaffer* was subsequently overruled on other points—*Smither and Company, Inc. v. Coles* [D. C. Cir. 1957], 242 F. 2d 220.) Decisions following the lead in the *Hitaffer* case are: *Hoekstra v. Helgeland* [1959], 78 S. D. 82, 98 N. W. 2d 669; *Brown v. Ga.-Tenn. Coaches, Inc.* [1953], 88 Ga. App. 519, 77 S. E. 2d 24; *Dini v. Naiditch* [1960], 20 Ill. 2d 406, 170 N. E. 2d 881; *Montgomery v. Stephan* [1960], 359 Mich. 33, 101 N. W. 2d 227; *Yonner v. Adams* [Del. 1961], 167 A. 2d 717; *Mo. Pac. Trans. Co. v. Miller* [1957], 227 Ark. 351, 299 S. W. 2d 41; *Novak v. Kansas City Transit, Inc.* [Mo. 1963], 365 S. W. 2d 539; *Ellis v. Fallert et al.* [1957], 209 Or. 406, 307 P. 2d 283; *Cooney v. Moomaw* [D. Neb. 1953], 109 F. Supp. 448; and *Duffy v. Lipsman-Fulkerson & Co.* [D. Mont. 1961], 200 F. Supp. 71.

Most courts, however, which have considered the question since 1950 have followed the majority rule and have refused to permit the wife to maintain an action of this type. Within the past few years the following courts have considered the question and denied recovery: *State Farm Mut. Auto. Ins. Co. v. Village of Isle* [1963], 265 Minn. 360, 122 N. W. 2d 36; *Baird v. Cincinnati, New Orleans & Texas Pacific R. Co.* [Ky. 1963], 368 S. W. 2d 172; *Miller v. Sparks* [Ind. 1963], 189 N. E. 2d 720; *Wilson v. Redding* [Fla. 1962], 145 So. 2d 252; *Seagraves v. Legg* [W. Va. 1962], 127 S. E. 2d 605; *Page*

*v. Winter* [1962], 240 S. C. 516, 126 S. E. 2d 570; and *Deshotel v. Atchison, T. & S. F. Ry Co.* [1958], 50 C 2d 664, 328 P. 2d 449.

The decisions on the subject prior to 1952 are accumulated in 23 A. L. R. 2d 1378 under an annotation entitled "Wife's right of action for loss of consortium." Other American decisions on the question since 1952 denying the wife's recovery are: *Franzen v. Zimmerman* [1953], 127 Colo. 381, 256 P. 2d 897; *Ripley v. Ewell* [Fla. 1952], 61 So. 2d 420; *Coastal Tank Lines, Inc. v. Canoles* [1955], 207 Md. 37, 113 A. 2d 82; *Hartman v. Cold Spring Granite Co.* [1956], 247 Minn. 515, 77 N. W. 2d 651; *Larocca v. American Chain & Cable Co., Inc.* [App. Div. 1952], 23 N. J. Super. 195, 92 A. 2d 811; *Don v. Benjamin M. Knapp, Inc.* [1953], 281 App. Div. 892, 119 N. Y. S. 2d. 801, aff'd. 306 N. Y. 675, 117 N. E. 2d 128; *Garrett v. Reno Oil Company* [Tex. Civ. App. 1954], 271 S. W. 2d 764; *Nickel v. Hardware Mut. Casualty Co.* [1955], 269 Wis. 647, 70 N. W. 2d 205; *Ash v. S. S. Mullen, Inc.* [1953], 43 Wash. 2d 345, 261 P. 2d 118; *Fragnoli v. Israel* [1959], 20 Misc. 2d 436, 190 N. Y. S. 2d 1; *La Eace v. Cincinnati, Newport & Covington Ry. Co., Inc.* [Ky. 1952], 249 S. W. 2d 534; and *Kronenbitter v. Washburn Wire Co.* [1958], 4 N. Y. 2d 524, 176 N. Y. S. 2d 354, 151 N. E. 2d 898.

Federal Circuit Court decisions following various state laws have denied the wife recovery in: *Seymour v. Union News Company* [7th Cir. 1954], 217 F. 2d 168; *Filice v. United States* [9th Cir. 1954], 217 F. 2d 515; and *O'Neil v. United States* [D. C. Cir. 1953], 202 F. 2d 366.

No doubt the many cases in which a wife's claim has been rejected provides the basis for the rule as it is stated in Restatement, Torts, § 695, p. 496:

"A married woman is not entitled to recover from one who, by his tortious conduct against her husband has become liable to him for illness or other bodily harm, for harm thereby caused to any of her marital interests or for any expense incurred in providing medical treatment for her husband."

Some of the cases on the subject are a treatise in themselves: *Hitaffer v. Argonne Co.*, supra; *Hoekstra v. Helgeland*, supra; *Brown v. Ga.-Tenn. Coaches, Inc.*, supra; *Dini v. Naiditch*, supra; *Deshotel v. Atchison, T. & S. F. Ry. Co.*, supra; and *Neuberg, Appellant v. Bobowicz* [1960], 401 Pa. 146, 162 A. 2d 662.

A case note is found on the subject in 9 Kan. L. Rev. 333.

Inasmuch as the question presented is essentially one of first impression for this court, we shall review the origin of the common

law rule, examine its application by the courts of other jurisdictions and the reasons advanced for its retention or rejection.

A determination of what is meant by "consortium" is itself a problem, as evidenced by the fact that, as late as 1951, in the English case of *Best v. Samuel Fox & Co. Ld.* [1951], 2 K. B. 639, 657, Lord Justice Birkett, after reviewing the decision of the United States Court of Appeals in *Hitaffer v. Argonne Co.*, supra, was compelled to state: "The term 'consortium' is nowhere defined with complete precision."

The Pennsylvania court speaking of definition in *Neuberg, Appellant v. Bobowicz*, supra, said:

"We hesitate the longer to reincarnate the right to sue for loss of consortium in the form for which contention is made here when we see this confusion raised, seemingly, to the third power by the following even more involved, complexities. . . ." (p. 153.)

It has been said the legal term for marital companionship is consortium. It is defined in Black's Law Dictionary as conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection and aid of the other in every conjugal relationship.

Consortium has been defined as a right growing out of the marital relationship which includes the right of either spouse to the society, companionship, conjugal affection and assistance of the other. (*Hoekstra v. Helgeland*, supra—the court saying a loss or impairment of any such elements would sustain an action for alienation of affections.) *Hitaffer* defined consortium as embracing within its ambit, in addition to marital services, love, affection, companionship, sexual relations, etc., all welded into a conceptualistic unity. Generally it may be said the term "consortium" includes services, and the elements other than services are sometimes referred to as the sentimental elements of marriage or of the term "consortium." Some courts speak of the noneconomic aspects usually included within the term "consortium." An accumulation of the authorities discussing the definitions of "consortium" may be found at page 88 in the *Hoekstra* case. It is apparent in some of the cases the difference in definition or changes in meaning may account for the divergence in the opinions of the courts.

Unless otherwise indicated we shall use the term "consortium" in its all-inclusive sense. This appears to be consistent with the use of the term in *Gooch v. Gooch*, 112 Kan. 592, 211 Pac. 621,

where the court was confronted with an action for alienation of affections; and also consistent with *Clark v. Southwestern Greyhound Lines,* 144 Kan. 344, 58 P. 2d 1128, which held no distinction could be drawn between "services" and "companionship" in an action by the husband for loss of services and companionship by reason of injuries to the wife.

The underlying philosophy which denies to the wife a right to recover for loss of consortium negligently caused to her husband by another is historical in origin. It is, therefore, necessary to examine the common law and attempt to determine the reason for the rule that allowed a recovery by the husband for loss of the wife's consortium and denied the wife a recovery for the loss of the husband's consortium. Strangely enough, the writers on this subject do not seem to be in agreement.

Some take the view that at common law the wife had the lawful right to the consortium of the husband, that an injury to the husband which impaired the capacities of the husband was a violation of the wife's rights, but that because her identity was merged into that of the husband she could not maintain any action for the recovery of the damages to which she was otherwise entitled. They conclude that the only impediment to the maintenance of the action at common law was the wife's inability to sue. It is questionable whether there is adequate support for this view in the common law.

Others take the view that consortium was at common law considered an incident or component part of the husband's common law right to the services of the wife and inseparable therefrom. Under this view the wife had no cause of action as distinguished from a lack of remedy due to her incapacity to sue. (*Deshotel v. Atchison, T. & S. F. Ry. Co.,* supra; and *Ripley v. Ewell,* supra.)

A better perspective of the common law rule can be obtained by recognizing that marriage was only one of several relationships in which one person was regarded as having a special property interest in the services, if not the person, of another. A father had a legal property interest in the services of his child. He still does. A master had a form of legal property interest in the services of his servant. This relationship in its common law form has largely disappeared at the present time. At common law the father or master could recover, in appropriate cases, for injuries to the child or servant resulting in a loss of these services. Frequently recovery was allowed far in excess of the monetary damages.

Blackstone, generally considered the most reliable authority on the common law, explains the reason for the rule as applied to these relationships as follows:

"We may observe that, in these relative injuries, notice is only taken of the wrong done to the superior of the parties related, by the breach and dissolution of either the relation itself, or at least the advantages accruing therefrom; while the loss of the inferior by such injuries is totally unregarded. One reason for which may be this: that the inferior has no kind of property in the company, care, or assistance of the superior, as the superior is held to have in those of the inferior; and therefore the inferior can suffer no loss or injury. . . ." (3 Blackstone Commentaries [5th ed.] pp. 142, 143.)

From the present viewpoint we would not hesitate to say that, insofar as measurable pecuniary damages are concerned, a greater loss is sustained by a child whose father is completely incapacitated, than is sustained by a father whose child is seriously injured. The child loses far more than the financial assistance which the father might otherwise provide. The companionship, society, love, counsel and all the elements that go to make up the consortium of the marriage relationship except sex relations may be lost to the child. But the common law did not, nor does modern law, give the child, so long as the father survives, any cause of action against the stranger who negligently injures the father. (See, *Hoffman v. Dautel*, 189 Kan. 165, 368 P. 2d 57.)

The underlying process of thinking that evolved the common law rule seems to be that the law would allow a recovery by one person having a special property interest in the services of another when such other was injured by the wrongful act of a stranger.

Under the common law the husband had many rights with respect to the property, services and person of the wife which would be considered barbaric today. Many, in fact most, of these have been eliminated by the constitution and various statutes, but it is significant that we must look to the constitution and statutes for these changes. The courts have liberally construed statutes relieving the disabilities of coverture (See, G. S. 1949, 77-109), but have consistently recognized that when the common law was adopted as the law of this state it was done with full knowledge that the common law included the disabilities of coverture as they then existed.

From the beginning of our history as a state (Territorial Laws 1855, ch. 96, Laws 1862, ch. 135, G. S. 1935, 77-109) the common

law of England has been the basis of the law of this state, and except as modified by constitutional or statutory provisions, by judicial decisions, or by the wants and needs of the people, it has continued to remain the law of this state. (G. S. 1949, 77-109; *Gonzales, Administrator v. Atchison, T. & S. F. Rly. Co.,* 189 Kan. 689, 371 P. 2d 193; *State, ex rel., v. Board of Agriculture,* 158 Kan. 603, 605, 149 P. 2d 604; *Fergus v. Tomlinson,* 126 Kan. 427, 268 Pac. 849; and *In re Frye,* 173 Kan. 392, 396, 246 P. 2d 313.)

The same thing that has been said concerning the disability of married women may be said of the common law relative to torts. For example, the common law recognized no cause of action for wrongful death. This and other provisions of the common law found to be inconsistent with our present day conceptions of justice have been done away with or modified largely by statute.

Our court is committed to the proposition that the common law is not static, but is endowed with vitality and a capacity to grow. It never becomes permanently crystalized but changes and adjusts from time to time to new developments in social and economic life to meet the changing needs of a complex society. (*Hoffman v. Dautel,* 189 Kan. 165, 368 P. 2d 57.) The appellant strenuously urges the court to apply this rule to the situation presented for a reversal of the trial court.

In *Williams v. City of Wichita,* 190 Kan. 317, 374 P. 2d 578, this court said:

". . . From the earliest days of Kansas history, flexibility in the common law has been carefully preserved (G. S. 1949, 77-109). Indeed, the great office of statutes is to remedy defects in the common law as they are developed and to adapt it to the changes of time and circumstances. That the legislature may change the principle of the common law and abrogate decisions made thereunder when in its opinion it is necessary to the public interest is well settled. . . ." p. 331.)

It is no more than an historical accident that the husband's common law action for loss of consortium survived the enactment of the married woman's act of 1868 (now G. S. 1949, 23-201-204 and 206-207.) The statute drastically changed the legal status of married women, and it is not surprising that it was narrowly construed in the early cases that considered the scope of recovery to be allowed to an injured married woman. The husband's action has survived in theory by acquiescence and not because it has withstood critical analysis.

For example, in *City of Wyandotte v. Agan,* 37 Kan. 528, 15 Pac. 529, a married woman was injured by the alleged negligence of the city in the maintenance of a defective board sidewalk. She was engaged in a business of her own and brought an action to recover damages for disabilities which prevented her from carrying on her separate business. The court held than an action for such damages accrued to her alone, the court distinguishing between services performed on behalf of her separate business and those owed to her husband. The court said:

". . . The profits or earnings of such business or labor are her sole and separate property, and cannot be appropriated or controlled by her husband without her consent. So far, then, as she is deprived of these she suffers a loss which is personal to herself, for which she alone can recover. The fact that she is partially or wholly dependent upon the husband for support does not abridge her right of action, nor transfer to him that which accrued solely to her. Notwithstanding this, we are compelled to hold that the instruction was prejudicially erroneous. The duty devolves upon the husband to take care of and provide for the wife, and he is entitled to her society and to her services other than those performed on her sole and separate account. If he is deprived of these services in consequence of an injury inflicted, the loss is his, and the right of action therefor exists in him. . . ." p. 530.)

Under this interpretation of the Kansas act, a negligent injury to the wife gave rise to two causes of action, one in the wife for personal injuries and another in the husband for the loss of her society and services. In *Shattuck v. Pickwick Stages Corp.,* 135 Kan. 602, 11 P. 2d 996, the husband was permitted to recover for his nursing services to his injured wife.

However, in 1921 the legislature enacted an addition to the married women's act ( G. S. 1949, 23-205) to avoid multiplicity of suits by giving the wife the sole right to sue for her personal injuries and for the loss of her services to the husband, the latter being for the benefit of her husband. ( *Taylor v. S. H. Kress & Co.,* 136 Kan. 155, 12 P. 2d 808; *Clark v. Southwestern Greyhound Lines,* supra; and *White v. Toombs,* supra.)

Generally, in American jurisprudence under married women's acts enabling a married woman to sue in her own name, a wife has a right of action for loss of consortium in certain cases, even in the absence of any statute expressly conferring such right. A wife may maintain a suit for any interference by an outsider with any marital duty that the husband owes her, where such interference is intentionally or maliciously inflicted, since in such case there is

a direct attack upon the marital relationship. It is clearly a violation of a right which she has against the world. The cases in which her right of action is commonly sustained are those for alienation of affections of her husband and for criminal conversations, and closely akin thereto is her cause of action, sometimes recognized, for willful acts directed against her husband and causing her loss of consortium. (27 Am. Jur., Husband and Wife, § 513; p. 113; and see, *Gooch v. Gooch,* supra.)

As a result of the married women's acts, a large majority of the states today extend to both spouses the right to recover for loss of consortium caused by an intentional wrong. (Prosser on Torts, 2nd Ed. [1955], pp. 690-692.)

Various reasons have been assigned by courts which deny the wife a right to recover for the loss or impairment of her husband's consortium due to the negligent act of another. Generally, these courts hold that at common law a married woman had no right to sue for loss of consortium (*Ripley v. Ewell* [Fla. 1952], 61 So. 2d 420; *Ash v. S. S. Mullen, Inc.* [1953], 43 Wash. 2d 345, 261 P. 2d 118; *Deshotel v. Atchison, T. & S. F. Ry. Co.* [1958], 50 C. 2d 664, 328 P. 2d 449; *Franzen v. Zimmerman* [1953], 127 Colo. 381, 256 P. 2d 897; *Jeune v. Del E. Webb Const. Co.* [1954], 77 Ariz. 226, 269 P. 2d 723; *Snodgrass v. Cherry-Burrell Co.* [1960], 103 N. H. 56, 164 A. 2d 579; *Smith v. Nicholas Bldg. Co.* [1915], 93 Ohio St. 101, 112 N. E. 204; *Smith v. United Construction Workers, District 50* [1960], 271 Ala. 42, 122 So. 2d 153; *Page v. Winter* [1962], 240 S. C. 516, 126 S. 2d 570; and *Seagraves v. Legg* [W. Va. 1962], 127 S. E. 2d 605); and no right to do so was conferred upon her by passage of the married women's acts. (*Howard v. Verdigris Valley Electric Co-Operative, Inc.* [1949], 201 Okla. 504, 207 P. 2d 784; *Nickel v. Harware Mut. Casualty Co.* [1955], 269 Wis. 647, 70 N. W. 2d 205; *Ash v. S. S. Mullen, Inc.,* supra; *Franzen v. Zimmerman,* supra; *Seagraves v. Legg,* supra; *Coastal Tank Lines, Inc. v. Canoles* [1955], 207 Md. 37, 113 A. 2d 82; *Larocca v. American Chain & Cable Co. Inc.* [App. Div. 1952], 23 N. J. Super. 195, 92 A. 2d 811; *State Farm Mut. Auto. Ins. Co. v. Village of Isle* [1963], 265 Minn. 360, 122 N. W. 2d 36; *Baird v. Cincinnati, New Orleans & Texas Pacific R. Co.* [Ky. 1963] 368 S. W. 2d 172; *Cravens v. L. & N. R. Co.* [1922], 195 Ky. 257, 242 S. W. 628; *Smith v. Nicholas Bldg. Co.,* supra; and *Snodgrass v. Cherry-Burrell Co.,* supra.)

Many courts say that one of the main obstacles in allowing the wife recovery is the absence of any sound basis upon which to compute the value of consortium with any degree of certainty. A correlative argument against a wife's recovery is that to allow her to recover when she may be indirectly compensated by a judgment in favor of her injured husband might constitute double recovery for the same injury. (*Deshotel v. Atchison, T. & S. F. Ry. Co.*, supra; *Nickel v. Hardware Mut. Casualty Co.*, supra; *Larocca v. American Chain & Cable Co., Inc.*, supra; *Coastal Tank Lines, Inc. v. Canoles*, supra; and *Kronenbitter v. Washburn Wire Co.* [1958], 4 N. Y. 2d 524, 176 N. Y. S. 2d 354, 151 N. E. 2d 898.)

Other courts say the loss or damage to the wife for loss or impairment of her husband's consortium is too remote and indirect to be capable of measurement. (*Brown v. Kistleman* [1912], 177 Ind. 692, 98 N. E. 631; *Coastal Tank Lines, Inc. v. Canoles*, supra; *Larocca v. American Chain & Cable Co., Inc.*, supra; *Deshotel v. Atchison, T. & S. F. Ry. Co.*, supra; and *Hinnant v. Power Co.* [1925], 189 N. C. 120, 126 S. E. 307.)

In *Hitaffer* the court said none of the cases denying the wife a cause of action for loss of consortium commends itself on the basis of its logic. We quote from the opinion:

"As to those authorities which hold that the injury to the wife is not compensable because it is indirect, we simply state that if that be so then it would likewise be true in the husband's suit. But such is not the rule here. Invasion of the *consortium* is an independent wrong directly to the spouse so injured. The mere fact that the loss of one or the other of the elements thereof may have been indirectly redressed in anothers' suit, does not make the injury to the remaining elements any less direct.

"The argument that the injuries of which a wife complains are too remote and consequential fails for two reasons. In the first place, we are committed to the rule in negligence cases that where in the natural and continual sequence, unbroken by any intervening cause, an injury is produced which, but for the negligent act would not have occurred, the wrongdoer will be liable. And it makes no difference whether or not that particular result was foreseeable. Secondly, if such a rule were valid there could be no basis for distinguishing between an action by a husband and one by the wife. In both cases the damages for the sentimental elements would be too remote and consequential; and yet we do not apply such a rule in the husband's action. And, furthermore, there could be no reason for the allowance of an action for criminal conversation or alienation of affections in cases where the husband condoned the wife's conduct, for obviously there would be no disruption of services; yet under such circumstances, it has been held that the husband may sue the seducer. The same would also be true in cases where it has been held that a husband

has a cause of action for criminal conversation though living apart from his wife. Here too there could be no showing of a loss of services. In both cases the only injury to the spouse's *consortium* lies in the sentimental area.

"Within the rationale of the cases just cited, allowing a husband recovery in cases where he can show no loss of services, lies the destruction of the authorities which hold that the common law recognized no cause of action for the loss of the so-called sentimental elements of the *consortium* alone, and the cases which further refine the rule by holding that an action for the loss of the sentimental elements cannot be allowed unless there is a showing of a loss of some material services. There is no judicial precedent for these rules, and the allowance of the action where no loss of material service is shown effectively destroys them." (p. 815.)

The court also said:

"Another group of cases which similarly appear to place principal emphasis on the element of services in these actions hold that in negligent invasions of the *consortium* the wife has no cause of action because the husband, who is under a legal duty to support his wife according to his station in life, recovers in his action for the tort, as an element of his damages, for any impairment of his ability to perform his obligation, and thus the wife indirectly recovers for the value of any loss of her *consortium*. Any other conclusion, they reason, would result in a double recovery. The husband, on the other hand, is allowed the action when the wife is injured, because she is under no corresponding duty to him. Of course, as we have already pointed out, there is no foundation for the statement that the predominant factor involved in negligence cases of this type is the element of material services. For that reason we cannot accept their argument. There is more to *consortium* than the mere services of the spouse. Beyond that there are the so-called sentimental elements to which the wife has a right for which there should be a remedy. We do agree, however, that if the wife is allowed to sue, there could be a double recovery in regard to the service element of *consortium*, if the husband's recovery is not taken into account in measuring the wife's damages and we shall deal with the problem hereinafter in more detail." (p. 814.)

In *Hitaffer* the court began with the proposition that the common law gave to the husband a cause of action for the loss of consortium for injury negligently inflicted by another upon his wife. It then said the underlying ground of the common law rule of discrimination between husband and wife in respect of this right, was the incapacity of the wife to maintain a separate action for a tort, and that modern legislation had swept away and generally relieved the wife of the ordinary disabilities of coverture. Upon such assurance the court proceeded to hold that a husband and wife have, in the marriage relation, equal rights which will receive equal protection of the law. It then expanded the common law by recognizing a right in the wife to maintain an action for loss of consortium due to a negligent injury to her husband, saying:

"It is therefore the opinion of this court that in light of the existing law of this jurisdiction, in light of the specious and fallacious reasoning of those cases from other jurisdictions which have decided the question, and in light of the demonstratable desirability of the rule under the circumstances, a wife has a cause of action for loss of *consortium* due to a negligent injury to her husband." (p. 819.)

While the opinion in *Hitaffer* has exposed some of the fallacious reasoning in many cases and exploded fiction, it has not persuaded us the issue is free from doubt.

Brushing all legal jargon aside, the court is fundamentally confronted with a *basic policy consideration*. We recognize when the reason for a common law rule no longer exists, the rule should be changed. It is clear that the granting of relief to the wife for loss of consortium caused by negligent injury to her husband would constitute an extension of common law liability, and the courts are justifiably reluctant to depart from established limitations on recovery.

Our consideration of the question is premised upon certain basic facts. At common law the wife had no cause of action for loss or impairment of consortium caused by negligent injury to her husband. Under G. S. 1949, 23-203, a woman may, while married, sue and be sued, but the enactment of this statute did not give to the wife a cause of action which she did not have at common law.

Weighted in the scale is the historical origin of the husband's action for loss or impairment of the wife's consortium due to the negligent act of another. The Court of Appeals of New York in *Kronenbitter v. Washburn Wire Co.*, supra, said:

"To decide otherwise would be contrary to principle. . . . The argument that equality of the sexes calls for a change overlooks that the husband's right to damages for loss of consortium is based on outworn theory. . . ." (p. 527.)

Then, quoting from 18 Law and Contemporary Problems, pp. 219, 229, the court, adopting the language of Professor Jaffe, continued:

" 'More persuasive is the argument that since the husband has an action, so should the wife. But his action is a fossil from an earlier era. It is one of a group of archaic actions based on the notice that the paterfamilias was alone competent to sue for losses suffered by the family unit. . . . When to the husband's action, there is now added the wife's action for negligent injuries (which being emancipated she is entitled to bring) there is a danger of duplicating elements of damage. Ingenious efforts must be made to disentangle from the wife's recovery the constituents of the husband's cause of action. Indeed, *the emancipation argues for the restriction or abolition of*

*these actions rather than their extension.* Some courts have been bold enough entirely to abolish the husband's action. . . .'" (p. 527.) (Emphasis added.)

When two overlapping causes of action are made to grow where one has grown before, the possibility of double recovery is real.

The Missouri court, in discussing the prospect of double recovery in *Bernhardt v. Perry* [1919], 276 Mo. 612, 208 S. W. 462, 13 A. L. R. 1320 [error dismissed 254 U. S. 662, 65 L. Ed. 464, 41 S. Ct. 63], said:

". . . In the first place, her husband would recover full compensation for all injuries he sustained, . . . and in addition he would recover for all injuries to his 'vital organs' and for being incapacitated to care for, associate with and protect her, as well as being deprived of his right to consort with her. This would make him whole, as much so as it would be possible to do, within the contemplation of the law; with those damage collected he would be just as able to perform all of his marital duties and obligations to her as if he had never been injured; and the law presumes he would discharge those obligations to the best of his ability, which would fully compensate her for all damages she had received; but if he should not do so, then she would have her legal remedy against her husband and not against the person who injured him. But notwithstanding this full compensation he is supposed to have recovered and which he must expend upon her for her proper care, support, maintenance, etc., yet, if she is authorized . . . to recover from the defendant in this action, then she would recover from the same wrongdoer the damages she had sustained for the same injuries her husband had recovered for, and out of which, as before stated, he is legally bound to support, maintain and care for her. This would be double compensation, which in my opinion the Legislature never intended." (pp. 629, 630.)

The court in *Goldman v. Cohen* [1900] 30 Misc. 336, 63 N. Y. S. 459, noted there was no precedent for an action by the wife and held the compensation awarded because of negligence was remedial, not punitive, and tended to neutralize indirect losses to others by compensation to the husband and father, thus avoiding double or triple recoveries for the same elements of compensatory damages. The court stated the wife's interest in the husband's life and companionship was not a right of property, but lay in a region into which the law does not enter except when necessity compels, and distinguished the situation where such an interest is invaded by willful misconduct, pointing out that the law in such a case inflicts heavy damages upon the enticer or seducer, but noting that this was punishment and atonement rather than compensation.

The New Hampshire court in *Snodgrass v. Cherry-Burrell Co.,* supra, in denying the wife the right to bring this sort of an action,

held any recompense to the wife, whether the services lost to the home are her own, her husband's or her child's, must be derived indirectly out of the recovery by the husband and through his performance of his obligation to support the wife.

Adjectives, adverbs and epithets can neither solve nor eliminate the problem. If both the husband and the wife were permitted to bring independent actions for the recovery of damages inflicted by the negligent injury of another, there is no assurance which action would be tried first, or even that the two actions would be filed in the same court. Furthermore, by looking to the history of the husband's cause of action for his loss of consortium with the wife, it must be observed that each man's life is linked to the lives of many others, and an injury to one inevitably has its impact upon the lives of others. So far it has never been suggested that everyone who is adversely affected by an injury inflicted upon another should be allowed to recover his damages. If the common law of this state is extended to give the wife a cause of action, would not the court then be called upon to extend a cause of action to the children who likewise suffer a loss by reason of negligent injury to their father, or a partner in business who is materially damaged by his injury? Further questions are posed with respect to the settlement of actions where a spouse is injured. A settlement with the husband for his injuries may still subject the wrongdoer to an action on the part of the wife. In Kansas the entire damage in cases of negligent injury to a husband or father has always been considered as centering in him, and a settlement with him has always been recognized as closing the incident.

An action on behalf of the children was given careful attention by this court in *Hoffman v. Dautel*, 189 Kan. 165, 368 P. 2d 57, where the following observations were made:

"While courts should be ever alert to widen the circle of justice, at the same time they should proceed with caution in laying down a new rule in the light of conditions affected or to be affected by it. If this court were to conclude that a cause of action is here alleged, the far-reaching results of such a decision would be readily apparent. A new field of litigation would thus arise between minor children and third party tort-feasors who injure either parent when it is alleged that the negligent injury contributed to the impairment or destruction of the happy family unit with resulting loss and damage to the minor children. The possibility of multiplicity of actions based upon a single tort and one physical injury, when there is added the double-recovery aspect of such a situation in the absence of some statutory control, is deemed sufficient to prevent this court from answering in the affirmative

that a cause of action has been alleged. The district court did not err in sustaining the motion to strike paragraphs 7, 8 and 9 from the petition." (p. 169.)

Judge Arthur J. Stanley, Jr. in the Federal District Court of Kansas adopted the reasoning of the foregoing decision, holding under Kansas law that a wife has no cause of action for loss of consortium because of injuries to her husband in *Criqui v. Blaw-Knox Company* [D. C. Kan. 1962] 208 F. Supp. 605. The Court there said:

"The Supreme Court of Kansas has said that G. S. 23-205 was enacted to avoid a multiplicity of suits. *White v. Toombs,* 162 Kan. 585, 178 P. 2d 206 (1947). The legislature having established a policy against such multiplicity where the wife is injured, it would seem that the same rule should govern where the husband is injured. In the recent case of *Hoffman v. Dautel,* 189 Kan. 165, 368 P. 2d 57 (1962), it was held that minor children have no cause of action for damages arising out of nonfatal injury to their father, the court saying that to hold otherwise would result in multiplicity of actions, with the added possibility of double recovery." (p. 608.)

Upon due consideration we refuse to extend the common law by giving the wife a cause of action for loss or impairment of consortium caused by negligent injury to her husband, and hold that the trial court properly sustained a demurrer to paragraph XVIII of the petition.

In our view the legislature rather than the courts can best deal with the problems presented. For example, the legislature, if it found this type of suit to be desirable, could define the extent of the liability, designate who may maintain the action as it did in the situation where the wife is negligently injured (G. S. 1949, 23-205), and provide safeguards against the danger of double recovery, such as a requirement that there be a joinder of the person directly injured and the one consequentially harmed. The legislature could also specify whether the proceeds should belong to the plaintiff alone or to both spouses. Clarification by statute as to both the husband and the wife would, of course, be preferable to piecemeal determination of the problems by judicial decision.

The judgment of the lower court is affirmed.

WERTZ and ROBB, JJ., dissent.