No. 74,269

DAVID C. KLAUS, RYAN M, KLAUS, by and through his next friend, David C. Klaus, and MEGAN N. KLAUS, by and through her next friend David C. Klaus, *Plaintiffs*, v. FOX VALLEY SYSTEMS, INC., *et al.*, *Defendants*.

(912 P.2d 703)

Opinion filed March 8, 1996.

*Mark E. Kelly*, of Withers, Brant, Igoe & Mullennix, of Liberty, Missouri, argued the cause and was on the brief for plaintiffs.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *Jay B. Brown*, of the same firm, was with him on the brief for defendant Fox Valley Systems, Inc.

*Ryan G. Terril*, of Dr. Samuel K. Cullan and Associates, of Overland Park, argued the cause, and *Samuel K. Cullan*, of the same firm, and *Max Von Erdmannsdorff*, and *Stephen L. Mowry*, of Von Erdmannsdorff & Mowry, of Kansas City, Missouri, were with him on the brief for defendant Crown Cork & Seal Co., Inc.

The opinion of the court was delivered by

LARSON, J.: The United States District Court for the District of Kansas certifies two questions of law for our determination. We have jurisdiction under K.S.A. 60-3201.

The federal district court phrased the certified questions as follows:

"1. Whether under Kansas law minor children have a cause of action against a tortfeasor for direct negligent injury to their parent, resulting in an indirect injury to them for loss of parental care and society.

"2. If the answer to question (1) is yes, can the minor child pursue the cause of action in his or her name, or does the right of action vest in the injured parent, as is the case with a spouse's loss of consortium claim under K.S.A. 23-205?"

*Answer to certified questions*

1. No.

2. Having answered the previous question negatively, no answer to this question is required.

*Factual basis underlying the certified questions*

David C. Klaus, on behalf of his minor children, Megan and Ryan Klaus (plaintiffs or Klaus children), have sued Fox Valley Systems, Inc., (Fox Valley) and Crown Cork & Seal Co., Inc., (Crown Cork) (collectively defendants) to recover damages due to loss of parental care, love, and guidance, resulting from David C. Klaus' blindness, which was caused by an explosion of a spray paint can allegedly manufactured defectively by the defendants.

*Kansas decisions*

This is not an issue of first impression in Kansas. In *Hoffman v. Dautel*, 189 Kan. 165, Syl. ¶ 1, 368 P.2d 57 (1962), we specifically held:

"A minor child has no cause of action for damages arising out of the disability of its father, caused by negligence of the defendant, with attendant loss of acts of parental guidance, love, society, companionship and other incidences of the parent-child relationship."

Justice Fatzer, writing for a unanimous court, recognized the loss of parental services to the minor but refused to create and establish a new cause of action, reasoning as follows:

"It is common knowledge that a parent who suffers serious physical or mental injury is unable to give his minor children the parental care, training, love and companionship in the same degree as he might have but for the injury. Hence, it is difficult for the court, on the basis of natural justice, to reach the conclusion that this type of action will not lie. Human tendencies and sympathies suggest otherwise. Normal home life for a child consists of complex incidences in which the sums constitute a nurturing environment. When the vitally important parent-child relationship is impaired and the child loses the love, guidance and close companionship of a parent, the child is deprived of something that is indeed valuable and precious. No one could seriously contend otherwise.

"While courts should be ever alert to widen the circle of justice, at the same time they should proceed with caution in laying down a new rule in the light of conditions affected or to be affected by it. If this court were to conclude that a

cause of action is here alleged, the far-reaching results of such a decision would be readily apparent. A new field of litigation would thus arise between minor children and third party tort-feasors who injure either parent when it is alleged that the negligent injury contributed to the impairment or destruction of the happy family unit with resulting loss and damage to the minor children. The possibility of multiplicity of actions based upon a single tort and one physical injury, when there is added the double-recovery aspect of such a situation in the absence of some statutory control, is deemed sufficient to prevent this court from answering in the affirmative that a cause of action has been alleged." 189 Kan. at 168-69.

Although the precise issue has not been considered again by our court, the reasoning and logic of *Hoffman v. Dautel* have been the basis for several Kansas decisions in recent years. In *Schmeck v. City of Shawnee*, 231 Kan. 588, Syl., 647 P.2d 1263 (1982), a unanimous court held:

"A parent has no cause of action for his or her emotional, physical, or other injuries against one who negligently causes injury to an adult child, when the parent is not present at the scene, is not directly injured, and neither witnesses nor perceives the occurrence causing injury to the child."

In *Schmeck*, despite the grievous fact that a mother's life had been devastated in her attempt to care for a totally disabled daughter whose injuries allegedly had been caused by the defendants' negligence, our court refused to recognize a cause of action on the mother's behalf. We stated: "Despite our willingness to allow recovery in this situation, we are prevented from doing so by the same rationale followed in *Hoffman v. Dautel*, 189 Kan. at 168-69. 231 Kan. at 593. Thus, 20 years after *Hoffman v. Dautel*, its continued vitality and persuasiveness was clear when it was specifically followed by our court. We indicated no tendency to abandon the ruling or its underlying logic.

The next Kansas case to consider a similar issue to the one we face here is *Smelko v. Brinton*, 241 Kan. 763, Syl. ¶ 4, 740 P.2d 591 (1987), where we specifically held:

"A parent has no cause of action for his or her emotional injuries against one who negligently causes injury to a child when the parent is not present at the scene, is not directly injured, and neither witnesses nor perceives the occurrence causing injury to the child."

In *Smelko,* we followed *Schmeck* and refused to allow recovery to parents of a minor child who was burned by the improper use of a heating pad during a surgical procedure. While the opinion did not specifically cite *Hoffman v. Dautel* and upheld a substantial jury verdict in favor of the child, the cross-appeal on behalf of the parents was denied on the basis of the ruling in *Schmeck* which specifically followed and relied upon *Hoffman v. Dautel.* Thus, as late as 1987, this court again followed the logic and reasoning of both the *Schmeck* and *Hoffman v. Dautel* decisions.

Although decisions of the United States District Court for the District of Kansas are not binding upon this court, it should also be pointed out that in *Annis v. Butler Mfg. Co.,* 715 F. Supp. 328 (D. Kan. 1989), Judge Saffels specifically followed *Hoffman v. Dautel* and *Schmeck* in holding that under Kansas law, children had no cause of action for damages for loss of parental care and society resulting from injury to their father allegedly caused by negligence of others.

Thus, the continued validity of the *Hoffman v. Dautel* decision has been recognized almost into the 1990's. The question then becomes whether we are now prepared to abandon our consistent holding in light of a renewed contention by minor children who are admittedly disadvantaged by their parent's injury through the loss of parental care and support which they might otherwise have expected to receive.

*Contentions of the plaintiff Klaus children*

The plaintiffs paint a distressing picture of two minor children, through no fault of their own, being denied the benefit of parental care without any compensation to them from the allegedly negligent parties who caused this family catastrophe. They contend that we should no longer follow *Hoffman v. Dautel* because the possibility of double recovery and multiplicity of actions has been removed through passage of statutory safeguards limiting noneconomic losses and through availability of proper jury instructions to consider the damages suffered by a child separate from those suffered by a parent.

Plaintiffs contend that society has increasingly recognized children's rights. They argue that recovery is allowed in wrongful death actions even though the injury of the loss of parental services is no less remote and damages are no more speculative than those in the present personal injury action. Further, since spousal consortium actions are statutorily authorized in Kansas, any argument of remoteness is extinguished.

Finally, the Klaus children contend that any allegation of a negative impact on society through increased insurance costs is not relevant and the courts are obligated to fulfill their proper role as guardians of the dynamic common law and to allow recovery by a child for the loss of parental care, love, and guidance.

*Contentions of defendants Fox Valley and Crown Cork*

Defendants contend that *Hoffman v. Dautel* and related cases have remained the law of Kansas during the last 33 years, unchanged by legislative consideration or action, and there is no reason for the court to embark on a new course recognizing the cause of action alleged here. They contend the substantial risk of double recovery continues because an award to the parents will inherently flow to the benefit of the children; quantifying the nonpecuniary damages as a result of the alteration of the parent-child relationship remains remote and speculative; there is a possible adverse effect on the family unit where minor children receive segregated awards; there is a social cost in providing damages for loss of parental consortium; and expansion of liability under the common law is inappropriate at a time when restriction rather than expansion of liability has been the norm.

Defendants contend that despite the statutory caps on damages, allowing recovery to children would substantially increase the number of persons who could make a claim. They claim that if each such person were subject to a separate cap, the total award from a given injury would substantially increase, in direct contradiction to the legislative purpose of damage caps.

Defendants argue that recognizing the cause of action would raise questions of the rights of additional parties, adult children, and unborn children and that a myriad of procedural questions

would be raised, which should be resolved by comprehensive legislation rather than by judicial decision.

Finally, the defendants contend that in light of the legislature's willingness to recognize recovery in cases of wrongful deaths and spousal consortium, its refusal to involve itself in additional areas of family recovery should be taken as a specific approval of our decisions in *Hoffman v. Dautel* and the related Kansas cases cited above.

*Decisions and statutes of other states*

The Kansas rule in *Hoffman v. Dautel* was the universal rule among the states until the late 1970's, when a series of law review articles argued for the recognition of a cause of action for loss of parental consortium. Several states, beginning with Michigan in *Berger v. Weber,* 82 Mich. App. 199, 267 N.W.2d 124 (1978), *aff'd* 411 Mich. 1, 303 N.W.2d 424 (1981), and Massachusetts, in *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E. 2d 690 (1980), commenced a trend where states became somewhat divided on the issue. Our court recognized and considered these changes made by other jurisdictions in *Schmeck,* 231 Kan. at 593, but nevertheless determined that we should hold fast to the rationale of *Hoffman v. Dautel.*

Interestingly, the Massachusetts Legislature followed the *Ferriter* decision with a statutory enactment that prevented the recovery of loss of consortium by spouses or children of employees subject to its workers compensation act. Mass. Gen. L. ch. 152, § 24 (1994). And Michigan, in *Sizemore v. Smock,* 430 Mich. 283, 422 N.W.2d 666 (1988), cast doubt on the continued viability of the child's claim for parental consortium by rejecting a claim in the reverse situation—a parent's loss of her child's consortium.

It would unduly lengthen this opinion and serve no useful purpose to attempt to categorize or analyze the decisions of different states. It is sufficient to state that in the modern era a total of 22 jurisdictions have rejected a cause of action of a child for loss of parental consortium while 19, including Massachusetts and Michigan as limited above, have recognized the claim. Several states, including Iowa, Rhode Island, and Florida have recognized a cause

of action by statute. For a compilation of the holdings of the various states, see Annot., Child's Actions-Loss of Parental Attention, 11 A.L.R.4th 549 and the supplements thereto and Schneider, *Loss of Parental Consortium*, 33 For the Defense, p. 11 (August 1991), which contains an appendix listing and classifying all the decided cases.

*Analysis*

We commence our analysis by recognizing that although a child can recover in a wrongful death action for loss of affection and society of a deceased parent, denial of a cause of action for loss of consortium of an injured parent does not deprive a child of equal protection. *Borer v. American Airlines, Inc.*, 19 Cal. 3d 441, 138 Cal. Rptr. 302, 563 P.2d 858 (1977). This is important because the changes in the law that plaintiffs contend require us to recognize the parental consortium tort are not constitutionally required and have their origins in the legislature and not in decisions of courts evolving the common law.

A child's right to assert a claim for wrongful death of a parent is codified by statute, K.S.A. 60-1901 *et seq.*, as is one spouse's claim for loss of consortium with an injured spouse, K.S.A. 23-205. The latter was codified after the court found no such claim was actionable. Although the legislature has taken the initiative to permit these claims for injury affecting family relations, it has not acted to permit the claim for loss of consortium which is sought in this case.

It is interesting that a second *Hoffman v. Dautel* case, 192 Kan. 406, 388 P.2d 615 (1964), refused to recognize a spousal loss of consortium claim for injury to a husband because the legislature at that time permitted only the action by the wife for her husband's loss of services from her own injury. In 1976, the legislature amended K.S.A. 23-205 to permit recovery for the wife's loss of consortium when her husband was injured, making it apply equally to spouses whether they be male or female. It should be noted that the legislature acted only after the prior statute was found to violate equal protection in *Duncan v. General Motors Corporation*, 499 F.2d 835 (10th Cir. 1974). Thus, while the legislature exercised its prerogative to effectively overrule the second *Hoffman v. Dautel*

decision, it has remained silent as to the first, notwithstanding the passage of over 30 years.

It is possible to cite cases justifying the continuation of an existing doctrine on the basis of stare decisis and equally easy to cite cases stating that when the original reason for an existing rule has evaporated, the reason to continue it has also expired. However, when analyzed in connection with the separation of powers, stare decisis should limit our willingness to reevaluate a policy announced in a previous line of decisions.

*Brunett v. Albrecht*, 248 Kan. 634, 642, 810 P.2d 276 (1991), recognized that the common law is subject to modification by either judicial decision or legislative enactment in light of changing conditions. However, the declaration of public policy of whether an action can be brought under the common law is more properly a function of the legislative branch of government. See *Ling v. Jan's Liquors*, 237 Kan. 629, 640, 703 P.2d 731 (1985) (public policy question of whether to impose liability on vendors of alcohol to intoxicated patrons is legislative function, even though courts in other jurisdictions had resolved it).

In *Whitcomb v. Huffington*, 180 Kan. 340, 304 P.2d 465 (1956), we considered whether to recognize the right of a minor child to bring an action for the alienation of parental affections. The court noted that, like here, neither the common law nor statutes authorized such an action and other jurisdictions were divided as to whether it could be maintained. Our court thought the recognition of the action unwise, but it did not rest its decision not to permit the action on this ground when it stated:

"If we were to answer the question in the affirmative the ramifications and far-reaching results of our decision would readily be apparent to anyone giving much thought to the matter. In practical effect we would be opening up a new field of litigation, heretofore entirely unknown . . . . We recognize fully that merely because the asserted cause of action was unknown to the common law and has no statutory sanction in this state, such fact does not present a conclusive reason for the denial of the existence of such right. Nevertheless, we are of the firm conviction that from the standpoint of sound public policy the creation of new rights of action in the field of alienation of affections is a question for the consideration and determination of the legislature, and is a function which this court should not usurp." 180 Kan. at 343-44.

Deference to the legislature is warranted by the complexities that would arise in Kansas from recognizing a cause of action for loss of parental consortium. For one, because a personal injury nonpecuniary claim is capped at $250,000 (K.S.A. 60-19a02), but a wrongful death claim by an heir permits nonpecuniary damages of only $100,000 (K.S.A. 60-1903), recognizing this action would have the anomalous result of imposing a lower nonpecuniary liability on a defendant who kills a parent of a child than if the parent only had been injured. Other complexities include the issue raised by the second certified question; whether there are appropriate procedural safeguards against double recovery; questions of consolidation, jurisdiction, and venue; the application of the statute of limitations and its tolling; the method of allocating an award; and numerous other questions which a decision recognizing this cause of action would immediately generate and which we cannot answer here. In addition, a question would arise as to how severe an injury would be required before the action should be permitted and whether it would be proper to limit it only to minor children or whether it should be extended to adult children or other closely situated family members.

The values and social problems which existed at the time of *Hoffman v. Dautel* have not changed materially in the last 33 years. Plaintiffs have pointed out no intervening change that so completely alters the legal landscape that we are required to abandon the reasons for not recognizing this cause of action or that renders the *Hoffman v. Dautel* decision fundamentally unjust.

The plaintiffs do not contend, nor does it appear, that *Hoffman v. Dautel* was manifestly in error. It is apparent from the Kansas cases we have cited above that this court has for the period of time almost until the 1990's consistently followed the logic and reasoning of the *Hoffman v. Dautel* decision, and we are not shown or given any compelling reason to change at this time.

It is important to note, as we have above, that three of the states which recognize the cause of action do so by legislative action: Florida, Iowa, and Rhode Island. The fact that the Kansas Legislature has chosen not to do so weighs strongly on our decision.

We have thoroughly considered all the arguments of the plaintiffs and find they do not compel us to answer the certified questions in the affirmative. We hold that Kansas does not recognize that minor children have a cause of action against a tortfeasor for direct negligent injury to their parent, resulting in an indirect injury to them for loss of parental care and society.

We answer question No. 1 negatively. Question No. 2 need not be answered.